UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **MONTREAL LINN** | **CIVIL ACTION NO. 22-6259** |
| **VERSUS** | **JUDGE EDWARDS** |
| **POLICE JURY OF OUACHITA PARISH, ET AL.** | **MAG. JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court are three motions for summary judgment filed by each of the parties: the *pro se* plaintiff, Montreal Linn ("Mr. Linn");[1] the Police Jury of Ouachita Parish ("the Police Jury");[2] and the City of Monroe (sometimes "the City").[3] Each motion is opposed.

After careful consideration of the parties' memoranda and the applicable law, Mr. Linn's motion is **DENIED**, the defendants' motions are **GRANTED,** and Mr. Linn's claims against the Police Jury and the City of Monroe are **DISMISSED WITH PREJUDICE.**

I. BACKGROUND

A. Procedural Background

On December 29, 2022, Mr. Linn originally filed the present employment action against "Ouachita American Job Center," alleging that his civil rights were violated through his employer's "discrimination, retaliation, harassment, age,

---

[1] R. Doc. 74.
[2] R. Doc. 65.
[3] R. Doc. 90.

disabilities, etc."[4] Mr. Linn attached a "Right to Sue" letter he received from the Equal Employment Opportunity Commission ("EEOC") to his Complaint, which was issued on December 15, 2022.[5] Mr. Linn subsequently filed into the record a "Charge of Discrimination" form that he submitted to the EEOC on August 23, 2022.[6] Mr. Linn recounts the circumstances of his suit in that submission. Mr. Linn alleges that he was discriminated against because of his sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and retaliated against because of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101.[7]

## B. Factual Background

Mr. Linn participated in the Workforce Innovation & Opportunity Act National Dislocated Worker Program ("WIOA Program") administered by the Ouachita Parish Police Jury.[8] Through the WIOA Program, Mr. Linn was placed in a job as a trainee sanitation worker for the City of Monroe.[9] This program was governed by an agreement between the Police Jury and the City of Monroe.[10] Although placed with the City of Monroe, Mr. Linn was paid by the Police Jury.[11] Mr. Linn was not listed on the City's payroll and never received a paycheck from the

---

[4] R. Doc. 1, p.1. The original defendant, "Ouachita American Job Center," was incorrectly named. The proper defendant is the Police Jury of Ouachita Parish. Mr. Linn's original complaint, and numerous subsequent amended complaints, involved a host of defendants, most of whom have been dismissed from the suit. The only remaining defendants are the Police Jury and the City of Monroe.
[5] R. Doc. 1-2.
[6] R. Doc. 5, p.2.
[7] *Id.*
[8] R. Doc. 65-1, p. 3.
[9] R. Doc. 90-1, p. 5.
[10] R. Doc. 90-3, p. 2.
[11] R. Doc. 65-2, p. 2.

City.[12] The City of Monroe did not have the authority to dismiss a person placed through this program without consultation with the Police Jury.[13] Mr. Linn last worked his position with the City of Monroe on December 21, 2021.[14]

Mr. Linn does not dispute that he was employed as a sanitation from September 14, 2021 until December 21, 2021.[15] Mr. Linn alleges that his supervisor, Frederick Coleman ("Coleman"), asked him if he knew the difference between a man and a woman and asked him about his sexual preference.[16] Mr. Linn also claims that Coleman knew about his "disabilities" and doctors' appointments.[17] Linn asserts that he complained about Coleman to Dee Woods, the Job Center Case Manager, and "Ms. [Dorothea] Bennett," the Job Center Director, and was subsequently discharged.[18]

The Police Jury and the City of Monroe (collectively "Defendants") rebut Mr. Linn's rendition of the facts with the affidavits from Doretha Bennett, the Coordinator of the WIOA Program and Brandon Creekbaum, the City Attorney for the City of Monroe.[19] Defendants assert that Mr. Linn was not discharged, he simply walked off the job and never came back.[20] Due to his continued absence, he was considered to be a "no call/no show" and released from the placement by the

---

[12] R. Doc. 90-3, p. 4.
[13] R. Doc. 90-3, p. 9.
[14] R. Doc. 5, p. 2.
[15] R. Doc. 5, p. 2.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] R. Docs. 65-2 and 90-3.
[20] R. Doc. 65-2, p. 2; R. Doc. 90-3, p.3.

Police Jury.[21] Mr. Linn never disclosed any disability to the Defendants.[22] He did not make any complaints about the conditions of his employment until May 31, 2022, five months after his last day at the job site.[23]

The WIOA Program continued to follow-up with Mr. Linn, on a quarterly basis, for a year after his last day with the City to offer him other job placements, but Mr. Linn declined the offers.[24]

## II. LAW

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[26] "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-moving party."[27] In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."[28]

---

[21] R. Doc. 65-2, p. 2.
[22] R. Doc. 65-2, p. 3; R. Doc. 90-3, p.3.
[23] R. Doc. 90-3, p.1.
[24] *Id.*
[25] Fed. R. Civ. P 56(a).
[26] *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case."
[27] *Id.* (internal quotations omitted).
[28] *Total E&P UDS Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[29] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[30] Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.[31] "The Court need consider only the cited materials, but it may consider other materials in the record."[32]

### B. Title VII Retaliation Claim

To establish a retaliation claim, a plaintiff must show that (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action.[33]

For the purposes of a Title VII retaliation claim, an employee engages in a "protected activity" when he (1) opposes any employment practice made unlawful by

---

[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247).
[30] *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).
[31] *Id. See also Hamilton v. Segue Software, Inc.* 232 F.3d 473, 477 (5th Cir. 2000). The opposing party must show, with significant probative evidence, that a genuine issue of material fact exists to rebut a properly supported motion for summary judgment.
[32] Fed. R. Civ. P. 56(c)(3). However, Rule 56 does not require a Court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).
[33] *See Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).

the Title VII statute, or (2) makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under [Title VII].[34]

To adequately plead an adverse employment action, a plaintiff "need only show that [he] was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the "terms, conditions, or privileges of employment."[35]

The causation element of a Title VII retaliation claim requires a showing that the adverse employment action taken against the plaintiff would not have occurred "but for" [his] protected conduct.[36]

The *McDonnell Douglas* burden-shifting framework governs Title VII retaliation claims and applies when evaluating summary judgment.[37] Per that framework, a plaintiff must first prove a *prima facie* case of retaliation by alleging sufficient facts demonstrating that (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action.[38]

Upon a sufficient showing of a *prima facie* retaliation claim, the burden then shifts to the employer to provide "some legitimate nonretaliatory reason" for the

---

[34] 42 U.S.C. § 2000e-3. *See also Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73. (5th Cir. 1998) (citations omitted).
[35] *Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023) (internal quotations omitted). This standard is lower than showing discrimination with respect to an "ultimate employment decision."
[36] *Pineda v. United States Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).
[37] *Septimus v. Univ. of Houston*, 399 F.3d 601, 609-10 (5th Cir. 2005). *See also Loyd v. City of Ruston, Louisiana*, No. 22-5809, 2023 WL 4771203, *3-6 (W.D. La. 7/26/23).
[38] *Septimus,* 399 F.3d at 607-08.

adverse action.[39] An employer may defeat any presumption of discrimination raised by the plaintiff with a legitimate reason for its adverse employment action.[40] A plaintiff may nonetheless avoid summary judgment if he "demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination."[41]

### C. ADA Legal Standard

To establish a *prima facie* case of an ADA violation, a plaintiff must show that: (1) he is a "qualified individual with a disability"; (2) he was "excluded from participation in, or denied the benefits of a public entity's service, programs, or activities or was otherwise discriminated against"; and (3) this exclusion, denial of benefits, or discrimination was "by reason of [his disability]".[42]

### III. ANALYSIS

#### a. The Police Jury's Motion for Summary Judgment.

The Police Jury argues that Mr. Linn's retaliatory termination claims under Title VII and the ADA should be dismissed because Mr. Linn cannot prove at least one of the essential elements of each claim.[43] The Police Jury bears the initial burden of demonstrating the absence of a genuine issue of material fact.[44] The

---

[39] *Id.* at 608.
[40] *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).
[41] *Id.*
[42] *Sosa v. Massachusetts Dep't of Correction*, 80 F.4d 15, 31 (5th Cir. 2023) (internal citations omitted).
[43] R. Doc. 65.
[44] *Celotex Corp.*, 477 U.S. at 323.

Police Jury may meet its burden by demonstrating to this Court that the record does not support Mr. Linn's claims under Title VII or the ADA.[45]

The Police Jury points to Mr. Linn's lack of evidence on the first element of the claim. Mr. Linn claims that he "reported" a joke made by his supervisor, Frederick Coleman, and that this act of reporting served as the basis for the Police Jury to fire him, i.e. the alleged adverse employment action.[46] An employee's reporting of a supervisor's conduct would fall under the purview of "protected activity" for the purposes of Title VII[47], however, the Police Jury points out that Mr. Linn fails to provide evidence, be it a formal complaint or other written documentation, of such a report.

The burden then shifts to Mr. Linn to identify some material in the record to support the first element of his claim.[48] Mr. Linn does not capitalize on this opportunity in his opposition. Mr. Linn's opposition claims that the Police Jury refuses to provide "phone records and transcript also video" *presumably* related to his alleged report.[49] Mr. Linn instead discusses an unrelated allegation where he was told not to inquire about compensation related to the COVID-19 pandemic at the threat of termination.[50] Mr. Linn's opposition does not cite to nor does it provide evidence to dispute the Police Jury's assertion that no complaint or report against Coleman exists. Therefore, Mr. Linn did not provide evidence that he engaged in

---

[45] *Stahl*, 283 F.3d at 263.
[46] R. Doc. 65-1, p.7.
[47] *Douglas*, 144 F.3d 372-73.
[48] *Hamilton*, 232 F.3d at 477.
[49] R. Doc. 69, p.1. In it's reply (R. Doc. 71), the Police Jury makes clear that Mr. Linn has not made an discovery request for the stated materials.
[50] *Id*.

any "protected activity." The Police Jury has met its burden to show that the record does not support the elements necessary for Mr. Linn to establish a *prima facie* claim of Title VII retaliatory termination.

Mr. Linn's ADA claim against the Police Jury also fails. The ADA generally prohibits an employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of [a] *known* disability …"[51] To establish a *prima facie* claim of a ADA claim, a plaintiff must first show that he is a "qualified individual with a disability."[52] The Police Jury argues that summary judgment on Mr. Linn's ADA claim is appropriate because there is no evidence in the record to support the first element of his claim, which requires Mr. Linn to have a <u>known</u> disability.[53] The Police Jury points to Mr. Linn's "ADULT/DISLOCATED WORKER APPLICATION," in which he clearly checks the "NO" box when asked if he is disabled or if he has any disabilities.[54] Moreover, the Police Jury makes clear, via affidavit by Doretha Bennett, that Mr. Linn "never disclosed any disability to [Ms. Bennett] or any WIOA staff."[55]

The Police Jury met its burden of showing that no genuine issue of material fact regarding Mr. Linn's disability status. The burden then shifted to Mr. Linn to identify material in the record to support his assertion that he had a disability known to the Police Jury. Once again, however, Mr. Linn did not raise any challenges to the Police Jury's assertion in his opposition. Mr. Linn was unable to

---

[51] 42 U.S.C. 12112 (4) (*emphasis added*).
[52] *Sosa*, 80 F.4d at 31.
[53] R. Doc. 65-1, p.8.
[54] R. Doc. 65-4, p.1.
[55] R. Doc. 65-2, p.3.

identify any material in the record to support the claim that he had a disability that was known to the Police Jury, therefore summary judgment in favor of the Police Jury is appropriate.[56]

For these reasons, the Police Jury's Motion for Summary Judgment is **GRANTED**.

### b. The City of Monroe's Motion for Summary Judgment.

The City of Monroe argues that summary judgment with respect to Mr. Linn's claims is warranted because the City of Monroe is not Mr. Linn's employer and thus not liable to him for any retaliatory termination claims.[57] The City of Monroe asserts that, per its agreement with the Police Jury, it has no authority to "hire, fire, supervise, and set the work schedule of [Mr. Linn]" and therefore it is not his legal employer.[58]

Mr. Linn did not raise any challenges to the City of Monroe's assertion in his opposition. Mr. Linn did not identify any material in the record to support his claim that the City of Monroe is his employer for Title VII and ADA purposes. Title VII and ADA discrimination claims are designed to protect employees from unlawful conduct by their employers; without an employment relationship, Mr. Linn has no cause of action against the City of Monroe. Therefore, summary judgment in favor of the City of Monroe is appropriate.

---

[56] *Hamilton*, 232 F.3d at 477.
[57] R. Doc. 90-1, p.8.
[58] R. Doc. 90-1, p.8. *See also Muhammad v. Dallas Cty. Cmty. Supervision & Corr. Dept.*, 479 F.3d 377, 380 (5th Cir. 2007). With respect to the *economic realities/common law control test* to determine if an employment arrangement exists, "the most important component of this test is the right to control the employee's conduct."

For the foregoing reasons, the City of Monroe's Motion for Summary Judgment is **GRANTED**.

### c. Mr. Linn's Motion for Summary Judgment.

Mr. Linn moved for summary judgment in his favor on all claims.[59] In his motion, he claims that there are inaccuracies in the defendants' affidavit of Dorothea Bennett and the copy of his application produced by defendants. These assertions fail to meet his initial burden of showing why he is entitled to judgment as a matter of law on his claims under Title VII and the ADA. Therefore Mr. Linn's Motion for Summary Judgment is **DENIED**.

### IV.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Police Jury's Motion for Summary Judgment[60] is **GRANTED**.

**IT IS FURTHER ORDERED** that the City of Monroe's Motion for Summary Judgment[61] is **GRANTED**.

**IT IS FURTHER ORDERED** that Mr. Linn's Motion for Summary Judgment[62] is **DENIED** and that Mr. Linn's Title VII and ADA discrimination claims against the Police Jury and the City of Monroe are **DISMISSED WITH PREJUDICE**.

---

[59] R. Doc. 74, p.2.
[60] R. Doc. 65.
[61] R. Doc. 90.
[62] R. Doc. 74.

A judgment will be issued accordingly.

_____
JERRY EDWARDS, JR.
UNITED STATES DISTRICT COURT JUDGE